UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| PATRICIA A. WAITS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CV-150 |
| | ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned to address the Plaintiff's Motion for Summary Judgment [Doc. 11] and Defendant's Motion for Summary Judgment [Doc. 15]. Plaintiff Patricia A. Waits seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner").

On May 1, 2006, plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began May 12, 2005 [Tr. 92-96]. After her application was denied initially and also denied upon reconsideration, plaintiff requested a hearing. On June 4, 2008, a hearing was held before an ALJ to review the determination of Plaintiff's claim [Tr. 21-49]. On September 23, 2008, the ALJ found that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since May 12, 2005, the alleged onset date (20 CFR 404.1420(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: history of thoratic spine strain, small disc protrusion at T8-T9, degenerative disc disease of the lumbar spine, chronic pain, chronic obstructive pulmonary disease and hypothyroidism (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She would be limited to light exertion with alternate sitting and standing at 30 minute intervals and should avoid frequent bending, twisting or lifting. The side effects of her medication would preclude concentration or attention required for highly skilled or highly detailed work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 16, 1956 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2005, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-20].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

3

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the

claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted). *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record also may possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535,

545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV. MEDICAL EVIDENCE

Plaintiff was treated in the emergency room at Roane Medical Center in April 2005 after she slipped off a ladder while working [Tr. 178-184]. In February 2006, plaintiff continued to have lower back pain and was treated by Matthew Anderson, a chiropractor[1] [Tr. 212-215, 270-273]. Dr. Anderson noted an "abnormal gait" exhibited by Plaintiff [Tr. 271].

Plaintiff went through two rounds of physical therapy, first at Cumberland Medical Center from June 26, 2006 to August 10, 2006, [Tr. 276-289], and again at Patricia Neal Outpatient Center from November to December 2006, [Tr. 290-297]. The physical therapist noted an "antalgic gait pattern" [Tr. 277].

Plaintiff was seen by Tersa Lively, D.O., for lower back pain with right leg radiation. Dr. Lively ordered an MRI on April 24, 2006, which revealed broad-based disc bulge at L4-L5, with a lesion in the right-side sacrum but no obvious bony expansion [Tr. 226-227].

Plaintiff was seen by Susan N. Pick, M.D., for a thoracic sprain relating to her workplace fall. An MRI on October 16, 2006 showed a small right-sided disc protrusion [Tr. 304]. In December 2006, Dr. Pick limited plaintiff to lifting, pushing, or pulling no more than five pounds [Tr. 303]. Dr. Pick, who was treating Plaintiff under her worker's compensation policy, released the claimant from her care on March 27, 2007, gave

---

[1] Plaintiff denotes Mr. Anderson as a chiropractor, but the record intermittently refers to him as an M.D. There is no evidence that Mr. Anderson is a doctor of medicine or osteopath. Instead the State of Tennessee confirms that he holds a doctor of chiropractics. *See* http://health.state.tn.us/licensure/ (searching "Matthew D. Anderson").

7

permanent restrictions against repetitive bending, twisting or lifting, and lifting no more than 20 pounds [Tr. 300]. Dr. Pick assessed a six percent permanent partial impairment for the thoracic spine [Tr. 300].

A consultative examiner, Edith Smith, M.D., examined Plaintiff on behalf of the state agency on July 24, 2006 [Tr. 235-243]. Dr. Smith found shoulder range of motion to be within normal limits, as were the range of motion of Plaintiff's elbows, wrists, and hands [Tr. 239]. The range of motion for Plaintiff's hips and knees were within normal limits [Tr. 240]. However, Dr. Smith did observe a limited range of motion in the thoracolumbar area with spasm and tenderness present bilaterally in the luteus minimus, gluteus medius and piriformia muscle [Tr. 240]. Straight leg raising was positive on the right in sitting and standing position. Right knee flexion produced involuntary shaking and the patient was unable to sustain secondary to weakness [Tr. 240].

Dr. Smith noted that plaintiff winced when sitting on her left cheek, and multiple position changes were required during the examination due to right buttock pain and right leg numbness from sitting [Tr. 240]. Dr. Smith observed that plaintiff "transfers from sitting and supine with some degree of deliberateness" [Tr. 240]. Plaintiff was unable to sustain standing on her right leg. Plaintiff squatted and resumed standing without assistance in only one quarter of her attempts [Tr. 241].

Dr. Smith diagnosed chronic right upper back pain with radiation to shoulders, chronic low back pain with radiation to right hip and leg with associated numbness [Tr. 241]. Dr. Smith found only mild degenerative changes [Tr. 241]. She noted that plaintiff's pain was

8

greater than the objective findings supported, though this fact could be contributed to the recurrent injury pattern [Tr. 241]. Dr. Smith noted lumbar disc disease with mild thoracolumbar degenerative disease related to a fall in 1979 [Tr. 241].

Dr. Smith found that Plaintiff could sit for four hours in an eight-hour day with "more frequent breaks than routine" [Tr. 242]. Dr. Smith further found that plaintiff should be able to stand for two to three hours in an eight-hour day [Tr. 242]. Dr. Smith concluded that plaintiff "may occasionally lift 20 pounds from standing and frequently lift 10 pounds" [Tr. 242].

After the administrative hearing, the ALJ sent plaintiff for a consultative examination by Edward D. Johnson, M.D. On July 9, 2008, Dr. Johnson found "marked narrowing of the L5-S1 disc space," and "marked spondylosis of the facet joints at L4-L5 with moderate foramen stenosis" shown on X-rays [Tr. 347-348]. Plaintiff demonstrated moderate paraspinal muscle spasm, and she had pain to palpation over the SI joints greater on the right [Tr. 347]. Plaintiff's range of motion in the lumbar spine was restricted, and she had positive straight leg raising. She had some restricted range of motion of the right shoulder, but she was able to perform the full range of motion of the cervical spine [Tr. 347]. Plaintiff had sensory impairment in her right fourth and fifth fingers [Tr. 347]. She was limited in squatting, but she was able to get on and off the examination table independently [Tr. 347].

Dr. Johnson found that Plaintiff could occasionally lift 11 to 20 pounds and that she could lift up to 10 pounds frequently [Tr. 350]. He also found that plaintiff could sit for six hours in an eight-hour day, walk for six hours in an eight-hour day, and stand for six hours

9

in an eight-hour day [Tr. 351]. Dr. Johnson found plaintiff could, without interruption, sit for four hours, walk for four hours, or stand for four hours [Tr. 351]. Dr. Johnson found plaintiff could only occasionally reach overhead with her right hand and was limited to frequent reaching, handling, fingering, feeling, push/pull [Tr. 352]. He also advised that she should only occasionally climb stairs/ramps/ladders/scaffolds, balance, stoop, kneel, crouch, or crawl [Tr. 353]. Dr. Johnson found that plaintiff: should never work at unprotected heights; could occasionally work in humid, extreme cold or heat; and could frequently work with moving mechanical parts, operating motor vehicle, or work in the presence of dust, odors, fumes and pulmonary irritants [Tr. 354].

## V. POSITIONS OF THE PARTIES

Plaintiff makes three arguments in support of her request for judgment in her favor: (1) the ALJ erred by accepting the vocational expert's testimony without including additional functional limitations; (2) the ALJ erred by not following the Medical-Vocational Guidelines;[2] and (3) the ALJ erred by not accepting the vocational expert's testimony regarding breaks during a work-day [Doc. 12 at 9-11]. The Commissioner responds to each

---

[2] Plaintiff titles this argument "Substantial Evidence Supports a Finding that Claimant Meets the Requirements of the Grid." [Doc. 12 at 10]. The Court's inquiry is not whether a different decision would have been supported by substantial evidence, but rather, whether the ALJ's decision was supported by substantial evidence. *See Crisp*, 790 F.2d at 453 n. 4 (explaining that it is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently). Affording plaintiff some leniency in titling and presentation, the Court has considered the substance of plaintiff's arguments.

of plaintiff's contentions and maintains that the ALJ's decision is supported by substantial evidence [Doc. 16 at 8-16].

## VI. ANALYSIS

### A. Additional Limitations Found by Dr. Johnson

As noted above the ALJ sent plaintiff to see Dr. Johnson, an orthopedic examiner, after the hearing before the ALJ had taken place. Plaintiff maintains that Dr. Johnson found certain functional limitations during this examination that had not been included in the hypothetical scenarios presented to the vocational expert at the hearing. Plaintiff argues that, therefore, "the [vocational expert's] opinion as accepted by the ALJ is not supported by substantial evidence," [Doc. 12 at 9], and the ALJ committed a reversible error. The only specific limitations found by Dr. Johnson that plaintiff has cited are in regards to plaintiff's ability to reach, handle, finger, feel, push, and pull.

The Commissioner responds that Dr. Johnson's opinion supported the ALJ's ultimate decision, despite the "slight and immaterial restrictions on Plaintiff's exertional and postural abilities," described by Dr. Johnson [Doc. 16 at 10].

At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> Assume an individual who is closely approaching advanced age at 51 presently, who has a high school education and has the same past relevant work as the Claimant. Assume there is a history of thoracic spine strain, and a small disc protrusion at the T-9 level of the thoracic spine, as well as degenerative disc disease of the lumbar spine. For this hypothetical, assume that the individual is limited to light exertion with alternate sitting or standing, and I'm going to assume for this hypothetical that the need to alternately sit or stand might occur at about 30 minute

> intervals. Assume the individual has to avoid frequent bending, twisting, or lifting. Assume that pain or the side effects of medications may preclude concentration or attention for highly skilled or highly detailed work . . . .

[Tr. 44]. The ALJ responded that a person suffering from the limitations described in the hypothetical could not perform plaintiff's past relevant work [Tr. 44]. The vocational expert testified that a person with those limitations, however, could perform work as a cashier, laundry folder, or counter rental clerk [Tr. 45].

Plaintiff claims that the jobs cited by the vocational expert "would require continuous reaching, handling, fingering, feeling, and [pushing/pulling], which were precluded by Dr. Johnson" [Doc. 12 at 10]. The Dictionary of Occupational Titles describes the position of cashier as requiring only that a cashier position entails "[e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body." Dict. Occ. Titles 211.362-010 ("Cashier I"). Dr. Johnson found that plaintiff could frequently (1/3 to 2/3 of the time) reach, handle, finger, feel, and push/pull [Tr. 352]. Thus, the cashier position cited by the vocational expert accords with Dr. Johnson's findings.

While the other positions cited by the vocational expert– laundry folder or rental clerk– may entail slightly more strenuous reaching, handling, etc., plaintiff undoubtedly could perform the cashier position, and according to the vocational expert's testimony, there are approximately 7,800 of these positions available in Tennessee and approximately 210,000

available nationwide that would accommodate Plaintiff's functional limitations including her need to alternate between sitting and standing [Tr. 44-45]. Accordingly, the Court finds that, even taking into account the functional limitations found by Dr. Johnson, plaintiff is able to perform jobs identified by the vocational expert in response to the ALJ's hypothetical. Specifically, she can perform work as a cashier, which is a position that exists in significant numbers in the local and national economies. Plaintiff's allegation of error is not well-taken.

### B. Necessity of Breaks

Plaintiff presents a second allegation of error which she describes as being based on the ALJ's failure to accept the vocational expert's testimony about her inability to maintain work. Having reviewed plaintiff's argument, the Court finds that plaintiff is essentially alleging error based upon the ALJ's failure to credit plaintiff's subjective description of her functional limitations. Plaintiff notes that she testified that she must take three breaks during the day and lie down due to pain for 15 minute to an hour in each break, in addition to taking medications that make her drowsy [Doc. 12 at 11 (referencing Tr. 34-36)].

At the hearing, counsel for plaintiff asked the vocational expert whether work would exist for plaintiff if her testimony was fully credited, to which the vocational expert responded:

> If her testimony was fully credible, then she could not be competitive to where she indicated that she has to lie down during the day and in combination with the other things she had said. The work environment wouldn't typically accommodate that situation.

[Tr. 47]. The ALJ in his decision, however, found that plaintiff's medical history did not support finding Plaintiff's allegations completely credible [Tr. 18]. The ALJ noted that, "given the claimant's allegations of totally disabling symptoms, one might expect to see indication in the treatment records of restrictions place on the claimant by the treating doctors. Yet a review of the records in this case reveals no restrictions recommended by the treating doctors" [Tr. 18].

Initially, the Court finds that the ALJ credited plaintiff's complaints regarding drowsiness, to an extent, by limiting her to unskilled work and noting that "the side effects of her medication would preclude concentration or attention required for highly skilled or highly detailed work" [Tr. 15]. To the extent the ALJ did not fully credit plaintiff's subjective complaints regarding drowsiness and breaks, the Court finds that the ALJ's decision and analysis is supported by substantial evidence. In its review of the record, the Court has found no instances of plaintiff complaining to her treating sources about such side-effects, nor has plaintiff cited the Court to any such evidence in the record. The ALJ explained his reasons for not fully crediting plaintiff's subjective complaints in a specific and well-reasoned discussion, citing the contradiction between the complaints and the medical evidence in the record, the lack of treatment records given such disabling conditions, the lack of restrictions diagnosed by treating physicians, the conservative treatment employed (*e.g.*, no surgery or implants), and the absence of significant neurological or motor deficits [Tr. 19]. Accordingly, the Court finds that plaintiff's allegation of error is not well-taken.

## C. Application of the Medical-Vocational Guidelines and Weight Afforded to Dr. Smith's Opinion

Finally, plaintiff argues that substantial evidence supports a finding that plaintiff meets the requirements of the Medical-Vocational Guideline, known as "the Grids," found at 20 C.F.R. § 404, Subpart P, Appendix A. As the Court stated in its discussion of the applicable standard of review, the Court's review is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley*, 581 F.3d at 405. It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp*, 790 F.2d at 453 n.4.

Notwithstanding, plaintiff's discussion on this point focuses upon the ALJ's decision not to adopt certain findings by Dr. Smith, a physician who examined Plaintiff on behalf of the state agency on July 24, 2006. Plaintiff notes that Dr. Smith found plaintiff could sit for four hours and stand for two or three hours in an eight-hour day [Doc. 12 at 10 (referencing Tr. 242)]. Dr. Smith also found that plaintiff would require "more frequent breaks than routine" [Tr. 242]. Plaintiff maintains that these restrictions would preclude plaintiff from performing light work and would support a finding that she could perform only sedentary work. Under the Grids, plaintiff's age[3] coupled with the ability to perform only unskilled or

---

[3] Plaintiff's age as figured after she reached fifty-years of age and became an individual approaching advanced age on July 16, 2006.

semi-skilled sedentary work would direct a finding of disability. 20 C.F.R. § 404, Subpart P, App'x A, Listings 201.09, 201.10.

The Commissioner responds that Dr. Smith's opinion was contradicted by the opinions of Dr. Pick, Dr. Mills, and Dr. Johnson. The Commissioner maintains that the ALJ's decision not to fully adopt Dr. Smith's non-treating source opinion was reasonable in light of the other medical opinions, objective medical findings, and conservative treatment in the record [Doc. 16 at 13].

When a physician is not a treating source his or her opinion must be evaluated using certain statutory criteria, including: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

In this case, the ALJ considered Dr. Smith's opinion and described it in detail, [Tr. 17-18], but ultimately, he concluded that only portions of the opinion were consistent with the medical evidence in the record. Dr. Smith opined that Plaintiff was able to occasionally lift 20 pounds and frequently lift 10 pounds [Tr. 242]. The ALJ adopted those limitations by restricting Plaintiff to light work in his RFC determination [Tr. 15]. Dr. Smith also opined that Plaintiff could only sit for four hours out of an eight-hour day and stand for two to three

hours out of an eight-hour day [Tr. 242]. In addition, Dr. Smith wrote that Plaintiff would need "more frequent breaks than routine"[4] [Tr. 242].

The ALJ's decision not to incorporate Dr. Smith's findings regarding limitations on sitting, standing, and breaks is supported by substantial evidence. No other physician opined that Plaintiff had such limitations in her ability to sit or stand, nor did other physicians find that Plaintiff needed "more frequent breaks than routine" [Tr. 242]. Dr. Pick did not mention any sitting or standing limitations when she treated plaintiff for a thoracic sprain, even though she described Plaintiff's postural and exertional restrictions [Tr. 300]. Dr. Mills and Dr. Johnson each found that Plaintiff could sit for 6 hours out of an 8-hour day and stand/walk for six hours out of an eight-hour day [Tr. 245, 350-351]. Dr. Mills criticized Dr. Smith's limitations, noting that Plaintiff's pain claims were greater than would be expected with the objective medical findings [Tr. 250]. In particular, Dr. Mills pointed out that Plaintiff's intervertebral alignment was intact and that there was an absence of fractures and active disease [Tr. 250].

The ALJ properly considered the medical records and other pertinent statutory factors, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), in determining that Dr. Smith's findings

---

[4] While the ALJ did not incorporate breaks from working in his decision, he did incorporate alternating intervals between standing and sitting [Tr. 15]. The ALJ and the vocational expert discussed the availability of a "break where [the Plaintiff] can change positions" without leaving the work station during the hearing [Tr. 45]. The vocational expert described these "breaks" as being available at will, so long as plaintiff did not leave the work station [Tr. 46]. This limitation was considered in the vocational expert's ultimate testimony that work accommodating plaintiff's functional limitations was available in substantial numbers. Thus, arguably the ALJ incorporated Dr. Smith's finding regarding breaks, but the Court has, nonetheless, considered plaintiff's position as if Dr. Smith's finding was not adopted.

17

regarding plaintiff's limited ability to stand/sit and plaintiff's need for breaks were not entitled to controlling weight. The ALJ's decision regarding Dr. Smith's opinions is supported by substantial evidence in the record. The ALJ did not err by not finding plaintiff would only be capable of sedentary work, and the ALJ's decision does not contradict the Grids. Accordingly, the Court finds that plaintiff's allegation of error is not well-taken.

## VII. CONCLUSION

Based upon the foregoing, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work, with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, Plaintiff's Motion For Summary Judgment [Doc. 11] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [Doc. 15] will be **GRANTED**.

ENTER ACCORDINGLY.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE